UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jane Doe,                                           Case No. 3:21-cv-140

             Plaintiff,

     v.                                            MEMORANDUM OPINION
                                                      AND ORDER

Red Roof Inns, Inc., *et al.*,

             Defendants.

### I. INTRODUCTION AND BACKGROUND

Between 2014 and March 2017, Plaintiff Jane Doe repeatedly was sexually assaulted by Anthony Haynes, Kenneth Butler, and Cordell Jenkins, at churches where the three men were pastors, as well as at Toledo-area hotels and a store at a local mall. Haynes, Butler, and Jenkins were charged by indictment with multiple offenses related to child sex trafficking. Butler and Jenkins eventually entered guilty pleas, while Haynes was convicted following a jury trial. Haynes and Jenkins are serving life sentences in the custody of the Federal Bureau of Prisons. Butler was sentenced to a total of 210 months.

Plaintiff subsequently initiated this litigation, filing suit against a total of 15 churches and companies, 12 individuals, and 20 John Doe Defendants. (*See* Doc. No. 15). She asserts 13 causes of action:

- Count 1 – violation of the Victims of Trafficking and Violence Protection Act, 18 U.S.C. § 1595 (against individual Defendants and Defendant Hotels[1]);

- Count 2 – unjust enrichment (against Defendant Hotels);

- Count 3 – negligence (against Defendant Hotels);

- Count 4 – negligence (against Defendants Greater Life Christian Center and Abundant Life Ministries, Inc.);

- Count 5 – breach of fiduciary duty (against Greater Life, Abundant Life, and individual Defendants);

- Count 6 – negligence / premises liability (against Defendants Pilgrim Assets, Inc., University Bible Fellowship, and Calvary Assembly of God);

- Counts 7 and 8 – respondeat superior / vicarious liability, and negligence (against Defendants Parlux Group, LLC and Parlux Holdings, Inc.);

- Count 9 – victim of crime, Ohio Revised Code § 2307.60 (against individual Defendants);

- Count 10 – intentional infliction of emotional distress (against all Defendants);

- Count 11 – corrupt activities, Ohio Revised Code § 2923.31 (against all Defendants);

- Count 12 – claim for punitive damages (against all Defendants);

- Count 13 – declaratory judgment regarding Ohio Revised Code §§ 2315.18 and 2315.21.

(Doc. No. 15 at 61-87).

Defendant Calvary Assembly of God has filed a motion for judgment on the pleadings as to Plaintiff's claims against it. (Doc. No. 72). Plaintiff filed a brief in opposition to Calvary's motion. (Doc. No. 81). Calvary filed a brief in reply. (Doc. No. 83). For the reasons stated below, I grant Calvary's motion.

---

[1] Plaintiff filed suit against four hotels and hotel chains: the Bel Air Motel; the Lighthouse Motel; the Sunset Motel; and the Red Roof Inn Defendants (Red Roof Inns, Inc., Red Roof Franchising, LLC, RRF Holding Company, LLC, Westmont Hospitality Group, Inc., Sharad Hospitality, Inc., and JPR Hospitality, Inc.).

## II. STANDARD

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must demonstrate sufficient factual matter that, when taken as true, states a claim which is "plausible on its face." *Id.* at 570.

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered" in deciding a Rule 12(c) motion, as may "matters of public record." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). If a written exhibit is "'inconsistent with the allegations of the complaint, the exhibit [generally] controls.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012) (quoting *Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union, No. 513*, 221 F.2d 644, 647 (6th Cir. 1955)).

## III. DISCUSSION

### A. OHIO CORRUPT PRACTICES ACT

In Count Eleven, Plaintiff alleges Calvary, along with all other Defendants, violated the Ohio Corrupt Practices Act ("OCPA"). (Doc. No. 15 at 83-84). The OCPA states in part that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Ohio Rev. Code § 2923.32(A)(1). A plaintiff who has been injured by a violation of

3

§ 2923.32 may bring a civil action under § 2923.34. To state an OCPA claim, the plaintiff must allege the following elements with specificity:

> (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.

*Kondrat v. Morris*, 692 N.E.2d 246, 253 (Ohio Ct. App. 1997) (citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 32-33 (Ohio Ct. App. 1993)).

Calvary argues I should dismiss Plaintiff's OCPA claim against it because she has not sufficiently alleged that it was part of an "enterprise" with Haynes, Jenkins, Butler, or the other Defendants. (Doc. No. 72 at 14-15). I agree and grant Calvary's motion for judgment on Count Eleven.

The OCPA defines an "enterprise" as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." Ohio Rev. Code § 2923.31(C). Plaintiff alleges "the relationship between Defendants constitutes one or more 'association in fact enterprises' under O.R.C. § 2923.31(C)." (Doc. No. 15 at 83).

"[A]n 'association in fact' enterprise [is] an ongoing organization, formal or informal, whose members function as a continuing unit that is separate from the pattern of corrupt activity in which it engages." *Herakovic v. Cath. Diocese of Cleveland*, 2005-Ohio-5985, 2005 WL 3007145, at *4 (Ohio Ct. App. Nov. 10, 2005) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). In order to establish this element of her claim, Plaintiff "must allege specific factual allegations regarding how the defendants coordinated and interacted with one another or functioned as a continuing unit." *W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 918 (S.D. Ohio 2014) (internal

4

quotation marks, citation, and alteration omitted). "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.

Plaintiff fails to plausibly allege Calvary coordinated and interacted with any of the other Defendants as a continuing unit separate from the alleged pattern of corrupt activity. She refers to the "persons controlling the affairs of the enterprise(s)" but does not tie that reference to any specific individual or entity. (Doc. No. 15 at 83-84). This allegation is not sufficiently specific to give Calvary fair notice of whether Plaintiff alleges it was controlling the alleged enterprise, much less how it "knew" Haynes, Butler, and Jenkins were victimizing Plaintiff and subsequently "participated in the concealment of the crimes." (*See* Doc. No. 81 at 7).

Moreover, while Plaintiff asserts she "has alleged sufficient facts concerning Calvary's complicity in the enterprise," (*id.*), her allegations assume, rather than show, the existence of an enterprise. An OCPA plaintiff must allege "'the association in fact had a shared purpose, continuity, unity, an identifiable structure, and some goals separate from the predicate acts themselves.'" *W. & S. Life Ins. Co.*, 54 F. Supp. 3d at 918 (quoting *Herakovic*, 2005 WL 3007145, at *5). Plaintiff has not done so. Therefore, I conclude Calvary is entitled to judgment in its favor as to Count Eleven.

**B.     Premises Liability**

Under Ohio law, an owner or occupier of a premises owes an invitee "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985). "A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers." *Aycock v. Sandy Valley Church of God*, 2008-Ohio-105, 2008 WL 115829, at *4 (Ohio Ct. App. Jan. 8, 2008) (citing *Jackson v. Kings Island*, 390 N.E.2d 810, 813 (Ohio 1979)).

5

Calvary moves for judgment on the pleadings as to Plaintiff's premises-liability claim, arguing (a) it was an out-of-possession landowner who did not owe Plaintiff a duty of care, and (b) the criminal acts engaged in by Haynes, Butler, Jenkins, and the other individual Defendants were not foreseeable. (*See* Doc. No. 72 at 3). Plaintiff disputes this, asserting she has alleged (a) Calvary retained control over the premises, and (b) "it was or should have been foreseeable that Calvary's breach of its duty would result in criminal activity on its premises." (Doc. No. 81 at 4-5).

The general rule in Ohio is that, where a property owner leases the premises, "the possessor or occupier[,] and not the owner[,] owes the applicable legal duty to the entrant . . . [as to the portion of the] rental property that is in the exclusive possession of the tenant." *Shump v. First Cont'l-Robinwood Assocs.*, 644 N.E.2d 291, 295 (Ohio 1994) (citations omitted). Calvary argues it is entitled to judgment on the pleadings because it leased the property to Abundant Life and hired a property management company to oversee the property and the lease. Therefore, Calvary contends, it did not have a duty to warn invitees about hidden dangers because it was an out-of-possession property owner without knowledge of or access to the property. (Doc. No. 72 at 6-8).

As I stated above, when a contract is attached to a pleading, the contract ordinarily will take precedence over conflicting allegations in the pleading. *Carrier*, 673 F.3d at 441. But it is not clear that the Property Management Services Agreement Calvary attached to its Answer in fact conflicts with Plaintiff's allegations. (*See* Doc. No. 71-1). Pursuant to that Agreement, a third party: collected rent from tenants, oversaw vendor services, including utilities; maintained records of income and expenses; and, provided building maintenance services. (*Id.* at 1-2).

Calvary has not submitted proof the Agreement remained in effect during the period of time[2] in which Plaintiff was allegedly victimized at that property. And the Agreement does not

---

[2] The Agreement had an initial term of January 24, 2014, through December 31, 2014, and automatically renewed for one-year periods until December 31, 2018, unless terminated upon 30 days' notice. (Doc. No. 71-1 at 1, 3).

6

conclusively establish that Calvary did not maintain control over the premises, as the Agreement specifically provides that Calvary had "the right to override any Manager decisions." (Doc. No. 71-1 at 2).

But this does not mean Plaintiff has stated a plausible claim for relief. In order to do so, Plaintiff must allege facts which show Calvary knew or should have known that individuals who were invited onto Calvary's property were at risk for sexual abuse or exploitation by Haynes, Butler, and Jenkins. She has not done so, relying instead on conclusory allegations of wrongdoing and alleged duties which Ohio law does not impose.

While Plaintiff asserts Calvary "knew" of suspicious and criminal activity on its property, including the sexual abuse Plaintiff suffered, she has not alleged any facts that could support a reasonable inference that Calvary had any actual knowledge of the individual Defendants' criminal misconduct. (*See* Doc. No. 15 at 76). It is not enough for Plaintiff simply to recite a required element of her claim. Though the Federal Rules of Civil Procedure require "further factual enhancement," *Twombly*, 550 U.S. at 557, Plaintiff has not provided any.

Plaintiff also alleges Calvary "had reason to know" she was being victimized on their property. (Doc. No. 15 at 76). Again, Plaintiff does not allege any facts which plausibly support this required element of her claim.

Finally, Plaintiff alleges Calvary had a duty to adopt specific policies and take certain precautions, such as installing security systems, in order to prevent and identify criminal activities taking place on their property. (*Id.* at 77). Plaintiff alleges it "was or should have been foreseeable" to Calvary that "the non-performance of these duties of reasonable care could, would[,] and did result in criminal activity on their premises . . . ." (*Id.*). Though Plaintiff claims the issue of foreseeability "is not ripe for adjudication at this stage of the proceedings," (Doc. No. 81 at 5), "the Supreme Court of Ohio has held that whether a duty exists is a question of law for the court to

decide." *Sabitov v. Graines*, 894 N.E.2d 1310, 1316 (Ohio Ct. App. 2008); *see Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989) ("The existence of a duty in a negligence action is a question of law for the court to determine.").

The general rule in a premises liability case is that 'there is no . . . duty to anticipate or foresee criminal activity.'" *Est. of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1021 (Ohio Ct. App. 2019) (quoting *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 543 N.E.2d 769, 773 (Ohio 1989)) (further citation omitted). There are a few limited exceptions to this general rule, including that, in certain circumstances, a "special relationship may arise based on the foreseeability of the harm . . . to impose a duty where a third party uses the property to inflict harm 'similar in nature to that already experienced or initiated' from the premises." *Ciotto*, 145 N.E.3d at 1021 (quoting *Fed. Steel*, 543 N.E.2d at 776). Foreseeability, in turn, is defined in the context of the "totality of the circumstances," such as "the location and character of the business and past crimes of a similar nature." *Krause v. Spartan Stores, Inc.*, 815 N.E.2d 696, 699 (Ohio Ct. App. 2004) (citing *Reitz v. May Co. Dep't Stores*, 583 N.E.2d 1071, 1074-75 (Ohio Ct. App. 1990)) (further citation omitted).

Ohio courts have refined this point even further: "the totality of the circumstances [must] be 'somewhat overwhelming' before a business owner or operator will be held to be on notice of and under a duty to protect against the criminal acts of third parties." *Mack v. Ravenna Men's Civic Club*, 2007-Ohio-2431, 2007 WL 1461791, at *4 (Ohio Ct. App. May 18, 2007) (citing cases). This "standard" requires that the facts underlying the plaintiff's claim involve "circumstances in which 'a reasonably prudent person would have anticipated that an injury was *likely* to result from the performance or nonperformance of an act.'" *Ciotto*, 145 N.E.3d at 1022 (quoting *Fed Steel*, 543 N.E.2d at 773) (emphasis added by *Ciotto*).

Taken together, these principles of law establish that, though Plaintiff is not required to offer evidence at this stage of the proceedings, she must allege facts that plausibly suggest Calvary owed

her a duty to prevent the criminal acts of third parties. *Ciotto*, 145 N.E.3d at 1022. She has not done so.

Plaintiff has not alleged any criminal offenses or incidents of sexual misconduct previously occurred on Calvary's property, or that anyone had reported allegations of impropriety against anyone associated with Abundant Life Ministries, which rented the premises from Calvary. (*See* Doc. No. 15 at 21). In short, Plaintiff has not offered any reason why Calvary should have been on notice that it had a duty to protect invitees to its premises from the criminal actions of third parties.

Plaintiff must do more than simply allege Calvary had a duty to prevent the harm she suffered. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Plaintiff's premises liability claim against Calvary rests only on legal conclusions, and she is not entitled to proceed to discovery in an attempt to locate facts which might support those conclusions.

### C.     Intentional Infliction of Emotional Distress

Plaintiff's claim against Calvary for the intentional infliction of emotional distress suffers from the same shortcomings. A plaintiff asserting a claim for intentional infliction of emotional distress under Ohio law must plausibly allege:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in[,] serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency . . . ; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 712-13 (Ohio Ct. App. 2009) (citing *Ashcroft v. Mt. Sinai Med. Ctr.* 588 N.E.2d 280, 284 (Ohio Ct. App. 1990)).

Plaintiff has not established Calvary had a duty to act to prevent the criminal behavior of third parties and, therefore, she cannot show Calvary's failure to learn of and intervene in the individual Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go

9

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) (citation and internal quotation marks omitted). Moreover, her contention that she "was within the reasonably foreseeable zone of danger," (Doc. No. 15 at 83), is an unsupported legal conclusion couched as a factual allegation. I conclude Calvary is entitled to judgment in its favor on this claim.

## V.  CONCLUSION

For the reasons stated above, I conclude Plaintiff fails to state a plausible claim for relief and grant Calvary's motion for judgment on the pleadings. (Doc. No. 72).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge